UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE BARBARA ALVARADO,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, INC.,<br><br>Defendant. | Case No. 2:25-cv-09414-MAR<br><br>ORDER DENYING MOTION TO REMAND, DKT. 10 |

## I.

## SUMMARY OF ORDER

Plaintiff Yvonne Barbara Alvarado ("Plaintiff") filed the instant action in Los Angeles County Superior Court on April 3, 2025.   ECF Docket No. ("Dkt.") 1-1 ("Complaint").  Defendant removed the matter to this Court several months later, on October 2, 2025. Dkt. 1 ("Notice of Removal").  Plaintiff now moves to remand to state court, arguing that Defendant's removal was untimely.  Dkt. 10.  For the reasons stated below, the motion is **DENIED**.

## II.

## BACKGROUND

On April 3, 2025, Plaintiff filed a complaint in Los Angeles County Superior Court alleging violations of California's Song-Beverly Consumer Warranty Act, California Civil Code Section 1790 et seq.  Complaint ("Compl.") at 12-15.  Plaintiff's

Complaint also alleged a single cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.  eq.  Id. at 16.  The Complaint alleged that Plaintiff purchased a 2020 Chevrolet Colorado manufactured by Defendant General Motors, Inc. ("GM"), and that the vehicle was covered by a GM warranty.  Id. at 13.  Plaintiff further alleged that, although the vehicle suffered from transmission and engine defects, GM failed to repair or replace the vehicle, as required under the warranty.  Id.

Although the Complaint's cover sheet indicated that Plaintiff was demanding an amount that "exceeds $35,000," the Complaint itself did not state the amount of damages sought, the amount paid for the vehicle, or any other figure.  Compl. at 4.  The Complaint's prayer for relief, however, did seek actual damages, restitution, "a civil penalty in the amount of two times Plaintiff's actual damages," consequential and incidental damages, attorneys' fees, and prejudgment interest.  Id. at 17.

On October 2, 2025 Defendant removed the matter to this Court pursuant to 28 U.S.C. §§ 1336 and 1446.  Notice of Removal ("NOR") at 1.  Defendant represented that, sometime in the thirty days prior to its filing of the Notice of Removal, GM's own investigation revealed that the matter was removable from state court.  Id. at 2.  Plaintiff now moves to remand to state court, arguing that (1) Defendant's removal was untimely, and (2) Defendant has failed to establish that the amount in controversy requirement is met.  Motion (Dkt. 10) at 4, 9.

### III.

### LEGAL STANDARD

District courts have original jurisdiction over all civil actions "arising under the laws . . . of the United States," 28 U.S.C. § 1331, and over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."  28 U.S.C. § 1332(a).  A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court.  See 28 U.S.C. § 1441(a).  The case must, however, be

2

remanded to state court if, at any time before final judgment, it appears that the federal court lacks subject matter jurisdiction.  See 28 U.S.C. § 1447(c); Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 87 (1991).  Federal courts "strictly construe the removal statute against removal jurisdiction," such that any doubt as to the propriety of removal is resolved in favor of remanding the case to state court.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  A removing defendant bears the burden of proving federal jurisdiction.  See Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008); Gaus, 980 F.2d at 566.

## IV.

## DISCUSSION

**A.    TIMELINESS**

In general, a defendant seeking to remove a state case to federal court must file a notice of removal within thirty days of receiving the state court complaint.  28 U.S.C. § 1446(b)(1). 28 U.S.C. § 1446(b)(1) ("The notice of removal . . . shall be filed within 30 days after the receipt . . . of the initial pleading.").  But where the allegations of an initial complaint are not sufficient to establish removability, the statute provides a "second pathway to removal" upon later "receipt by the defendant . . . of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Dietrich v. Boeing Co., 14 F.4th 1089, 1090 (9th Cir. 2021); 28 U.S.C. § 1446(b)(3).  In such instances, the defendant must file a notice of removal within thirty days of receipt of any such document establishing removability.  28 U.S.C. § 1446(b)(3).  Although this time limit is not jurisdictional, it "is mandatory[,] and a timely objection to a late petition will defeat removal."  Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1212 (9th Cir. 1980).  But "[b]eyond those two deadlines, a defendant *may* remove a case [even] where it could have demonstrated removability earlier based on its [own]

knowledge beyond the pleadings." Gomez v. Nissan N. Am., Inc., No. 2:24-CV-09020-SVW, 2025 WL 26368, at *2 (C.D. Cal. Jan. 3, 2025) (quoting Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013) (internal quotation marks omitted); see also Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1123 (9th Cir. 2013) ("[T]hese two periods do not otherwise affect the time during which a defendant *may* remove.") (emphasis original).

Here, Plaintiff argues that because her federal Magnuson-Moss claim was apparent from the face of the Complaint, Defendant was required to take the "first pathway to removal" pursuant to 18 U.S.C. § 1446(b)(1). Dietrich, 14 F.4th at 1090; Mot. at 4. And, the argument goes, because Defendant's October 2 removal came far more than thirty days after service of the initial Complaint, remand is required. Mot. at 5. As Plaintiff only implicitly acknowledges, however, even though a federal Magnuson-Moss Warranty Act ("the Act") claim arises under the laws of the United States, "no claim shall be cognizable in a suit brought under [the Act] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C.A. § 2310(d). Thus, "[b]efore subject matter jurisdiction can be invoked by the federal courts under the Act, . . . a plaintiff must meet an amount in controversy requirement of $50,000." Romo v. FFG Ins. Co., 397 F. Supp. 2d 1237, 1239 (C.D. Cal. 2005); see also Kelly v. Fleetwood Enters., Inc., 377 F.3d 1034, 1037 (9th Cir. 2004) ("The Magnuson–Moss Warranty Act permits a consumer . . . to sue in United States district court provided that the amount in controversy is not less than the sum or value of $50,000.") (internal quotation mark and alteration omitted); Khachatryan v. BMW of N. Am., LLC, No. CV 21-1290 PA (PDX), 2021 WL 927266, at *2 (C.D. Cal. Mar. 10, 2021) ("Put another way, federal courts only have jurisdiction over Magnuson-Moss claims if the amount in controversy exceeds $50,000.").

The question, then, is whether the Complaint made clear that Plaintiff's Magnuson-Moss claim involved an amount in controversy over $50,000. See Dietrich, 14 F.4th at 1090. "There is nothing in the text of the Magnuson–Moss Act that would indicate that the amount in controversy for that statute is assessed any differently than the diversity jurisdiction requirement found in 28 U.S.C. § 1332." Romo, 397 F. Supp. 2d at 1240. Although Plaintiff's asserts that "it is impossible to believe that Defendant could not ascertain the amount in controversy exceeded $50,000," the Court disagrees. Mot. at 6:13-14. First, although Plaintiff essentially repeats the prayer for relief's claims for damages, penalties, and fees, she concedes that the "complaint does not allege a specific dollar amount in controversy." Id. at 6:12. Second, to the extent Plaintiff argues that an amount over $50,000 can be inferred or ascertained from the conjunction of the relief sought with the "explicit" allegation "that Plaintiff's claims arise out of his [sic] purchase of a new 2020 Chevrolet Colorado," Plaintiff misstates her own allegations. Mot. at 6:15-16. Contrary to Plaintiff's characterization, the Complaint at no point alleges that she purchased a new vehicle. Rather, the Complaint alleges that Plaintiff purchased her 2020 model-year vehicle in May 2022, suggesting that Plaintiff purchased the vehicle used.[1] Complaint ¶ 9. As such, the Complaint provides no clear basis to conclude that the $50,000 threshold for Magnuson-Moss jurisdiction is met. Absent such an indication, Defendant was not required to remove the matter to this Court within thirty days of receiving Plaintiff's Complaint.

Plaintiff also appears to suggest that Defendant missed the "second pathway" to removal. Mot. at 8. As stated above, even if removability is not apparent from the initial complaint, the "second pathway" requires a defendant to remove within thirty

---

[1] Defendant, moreover, has submitted the vehicle Retail Installment Sale Contract ("RISC"), which clearly indicates that Plaintiff purchased a used vehicle with 21,841 miles on it at the time of purchase. Declaration of Thomas V. Wynsma in Opposition to Motion, Ex. A (Dkt. 12-2).

days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Dietrich., 14 F.4th at 1090; 28 U.S.C. § 1446(b)(3).  According to Plaintiff, GM's failure to identify any such "other paper" "renders Defendant's justification facially deficient."  Mot. at 9:2.  This argument mischaracterizes the Notice of Removal and mistakenly attempts to impose timing restrictions regardless of the fact that Plaintiff did not (or does not claim to have) served or provided Defendant with any other paper from which removability could have been ascertained.  As explained above, aside from the thirty-day requirement applicable to the first and second removal pathways, "a defendant may remove a case [even] where it could have demonstrated removability earlier based on its knowledge beyond the pleadings."  Gomez, 2025 WL 26368, at *2 (quoting Kuxhausen, 707 F.3d at 1141 n.3 (9th Cir. 2013) (internal quotation marks omitted); see also Roth, 720 F.3d at 1123 ("[T]hese two periods do not otherwise affect the time during which a defendant *may* remove.") (emphasis original).  As stated in the Notice of Removal, Defendant determined that this matter was removable through GM's own investigation, not from any paper provided by Plaintiff.  NOR at 2.  As the Ninth Circuit has explained,

> [A] defendant may "remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines.  For good reason, § 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability *by a plaintiff*.  A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so.  But neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own."

Roth, 720 F.3d at 1125 (emphasis added).

Defendant has adequately demonstrated that its removal was timely.

///

///

**B.    AMOUNT IN CONTROVERSY**

Even where removal is timely, however, a removing defendant bears the burden of proving federal jurisdiction.  Luther, 533 F.3d at 1034; Gaus, 980 F.2d at 566.  Somewhat counterintuitively, in light of her primary argument that the Complaint did clearly indicate an amount in controversy greater than $50,000, Plaintiff proceeds to also argue that Defendant has not demonstrated that the amount in controversy exceeds $50,000.  Mot. at 9.  The Court disagrees.

Plaintiff's Complaint seeks, among other things, actual damages, civil penalties, and attorney's fees.  Compl. at 17.  "Actual damages under the Song-Beverly Act are equal to the actual price paid or payable by the buyer, minus the reduction in value directly attributable to use by the buyer."  Lukas v. Gen. Motors, LLC., No. 2:25-CV-08305-WLH-MAA, 2025 WL 3456648, at *5 (C.D. Cal. Dec. 1, 2025) (quoting Cal. Civ. Code § 1793.2(d)(2)(B)–(C) (internal quotation marks omitted).  A plaintiff who shows a willful violation of the Song-Beverly Act may recover a civil penalty of up to two times the amount of actual damages.  Cal. Civ. Code § 1794(c).  A prevailing plaintiff is also entitled to attorney's fees.  Cal. Civ. Code § 1794(d).

The RISC indicates a total sale price for the vehicle of $45,845.25 and a "total cash price" of $30.988.00, exclusive of accessories.  Wynsma Decl., Ex A.  Defendant has also submitted the entire dealer repair history for the subject vehicle, which includes the vehicle mileage at the time of each service visit.  Wynsma Decl., Ex B.  Mileage bears on actual damages insofar as it translates to a reduction in a vehicle's value attributable to a "buyer prior to the time the buyer first delivered the vehicle . . . for correction of the problem that gave rise to the [warranty dispute]."  Cal. Civ. Code § 1793.2(d)(2)(C).  By statute, that reduction in value is calculated "by multiplying the actual price of the new motor vehicle . . . by a fraction having as its denominator

120,000 and having as its numerator the number of miles traveled."[2] Id. Thus, the higher the mileage, the higher the reduction in value, and the lower a plaintiff's actual damages.

Here, Plaintiff argues that Defendant has "arbitrarily chosen a repair visit," and associated mileage figure, without demonstrating that that visit represents Plaintiff's first attempt to repair the defect alleged. Reply at. 2:20. Not so. The repair history lists but a single attempted dealer repair during the time of Plaintiff's ownership of the vehicle, on January 7, 2025. Wynsma Decl., Ex. B. at 1. The basis for Plaintiff's argument that "[t]emporally, it's unclear whether this was, indeed, the *first* repair visit for this alleged defect" is therefore not apparent to the Court. Reply at 3:10-11. The next most recent entry on the service history, for "factory maintenance," is dated June 9, 2020, approximately two years before Plaintiff alleges that she purchased the vehicle. Id. at 2. Thus, Defendant's "choice" of the January 7, 2025 repair date was hardly arbitrary, but rather was the only possible option. At the time of the January 7, 2025 repair attempt, Plaintiff's vehicle had 56,688 miles on the odometer. Wynsma Decl., Ex. B. at 1. Plaintiff purchased the vehicle with 21,841 miles on it. Wynsma Decl., Ex. A. Therefore, 34,847 miles are attributable to Plaintiff prior to the time she first brought the vehicle in for a warranty repair.

In determining the starting value of a vehicle, courts often look to the "total cash price" as the "most appropriate measure of actual damages." Cabrera v. FCA US LLC, No. EDCV-21-1501-JGBS, 2022 WL 310133, at *3 (C.D. Cal. Feb. 1, 2022); see also Luna v. FCA US LLC, No. 21-CV-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) (explaining difficulty of determining finance charges actually paid).

---

[2] "The Ninth Circuit has held that § 1446(b)(1) requires a defendant to apply a reasonable amount of intelligence in ascertaining removability[,] and that multiplying figures . . . is an aspect of that duty." Perry v. Ford Motor Co., No. 2:24-CV-03197-WLH-MAR, 2024 WL 3879142, at *3 (C.D. Cal. Aug. 20, 2024) (quoting Kuxhausen, 707 F.3d at 1140) (internal quotation marks omitted).

8

Here, that figure is $30,988.  Wynsma Decl., Ex. B. at 1.  The corresponding reduction in value attributable to mileage is $8,998.66, resulting in a vehicle value of $21,999.34 at the time of the first repair attempt.[3]  Defendant also represents, and Plaintiff does not appear to dispute, that a further offset of $800 applies.[4]  See Stewart v. Gen. Motors LLC, No. 2:25-CV-07153-SPG-MAA, 2025 WL 2848991, at *3 (C.D. Cal. Oct. 7, 2025) (describing statutory offsets for rebates, unpaid finance charges, etc.) (citing Cal. Civ. Proc. Code § 871.27).   Plaintiff's actual damages, therefore, total $21,199.34.[5]

Those damages alone do not cross the $50,000 jurisdictional threshold for a Magnuson-Moss claim.  Plaintiff's Complaint, however, also seeks civil penalties of up to two times Plaintiff's actual damages.  "The Ninth Circuit routinely considers civil penalties when deciding whether the amount-in-controversy requirement has been satisfied."  Wang v. FCA US LLC, No. 8:24-CV-02060-JWH-KES, 2025 WL 1218745, at *2 (C.D. Cal. Apr. 28, 2025) (collecting cases).  Taking those penalties into account yields a figure of $63,598.02, an amount sufficient to establish the requisite amount in controversy to bring a Magnuson-Moss claim, even without consideration of the attorney's fees and other monetary relief Plaintiff seeks.

///

///

///

---

[3]  $30,988 - (34,847 miles/120,000 miles) = $8,998.66.

[4]  Defendant identifies this as an "optional third party contract," (Opp. at 19:16-17), which is listed on the RISC as "Debt Cancellation Agreement."  Wynsma Decl., Ex. A.

[5]  Although Defendant's calculations match the Court's with respect to mileage offsets, Defendant proceeds to examine finance charges and perform a series of calculations that are not clear to the Court to arrive at a damages figure of $28,040.88. Opp. at 19.

## V.

## **CONCLUSION**

Because the amount in controversy was not clear from the four corners of Plaintiff's initial Complaint, Defendant's removal to this Court was not untimely. Defendant has, however, demonstrated that the Magnuson-Moss Warranty Act's $50,000 jurisdictional threshold is satisfied here. Accordingly, Plaintiff's Motion to Remand is **DENIED.**

Dated: February 19, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

10